<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
_____
                                 :
WILLIAM HENRY HARRISON,          :
                                 :     Civil Action No. 08-3050 (RMB)
             Plaintiff,          :
                                 :
        v.                       :          O P I N I O N
                                 :
MS. K. SMITH, et al.,            :
                                 :
             Defendants.         :
_____:
```

**APPEARANCES:**

William Henry Harrison, <u>Pro</u> <u>Se</u>
1913 Johnson Court
Richmond, VA 23223

**BUMB, District Judge**

    Plaintiff was confined at the Federal Correctional Institution, Fort Dix, New Jersey, at the time he submitted his civil complaint.  This matter is currently before this Court on Plaintiff's amended complaint, filed on July 1, 2009 (docket entry 7).  Previously, Plaintiff's case was administratively terminated, without assessing a filing fee, and the case was ordered closed (docket entry 4).  This Court granted Plaintiff leave to file an amended complaint, which he did, and the case was reopened on May 20, 2009 (docket entry 6).

    Based on Plaintiff's affidavit of indigence, filed previously, this Court will grant his application to proceed <u>in forma pauperis</u> and order the Clerk of the Court to file the

amended complaint.  This Court must now screen the amended
complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B).

## BACKGROUND

Plaintiff states that he is currently on supervised release.
In addition to being housed at the Federal Correctional
Institution in Fort Dix, New Jersey, he was also housed in
federal facilities in Pennsylvania and Virginia.  He seeks to sue
numerous federal actor defendants for violations of his rights.

Specifically, Plaintiff states that in 2003, he was
classified by the Bureau of Prisons ("BOP") as a "sex offender"
and "violent offender" based on a pre-sentence report ("PSR")
noting that Plaintiff had a prior conviction for rape and other
sexual offenses from 1975.  (Am. Complt., ¶ 14).  Plaintiff
states that the information regarding the conviction for rape in
the PSR was false, and that he protested the false information,
but the information was not removed.  The sex offender
classification deprived Plaintiff of privileges while he was
incarcerated, and subjects him to sex-offender registration upon
leaving the BOP.  (Am. Complt., ¶ 15).

In 2007 and 2008, while housed in a federal facility in
Pennsylvania, Plaintiff again sought to have the false
information in the PSR removed from his BOP central file through
the Administrative Remedy Process.  The classification was
upheld.  (Am. Complt., ¶ 16).

2

In January of 2008, Plaintiff appeared before the United States District Court, Eastern District of Texas, his sentencing court, for a resentencing hearing. (Am. Complt., ¶ 17). Although Plaintiff had challenged the erroneous information at his first sentencing hearing in 2003, at the resentencing hearing, Plaintiff again contested the information in the PSR. Plaintiff claims that at the 2003 sentencing hearing, the PSR issue was not resolved. However, at the 2008 hearing, the resentencing judge "specifically listened to [Plaintiff's] arguments against the false information and made a determination with respect thereto." (Am. Complt., ¶ 18). That judge, Judge Davis, found that the information in the PSR was false and misleading, in that Plaintiff was only found guilty, after a plea, of bail jumping that occurred in 1980 under a separate indictment number different from the rape charge. Judge Davis found that the rape charge was dismissed, and there never was a conviction for any sexual or violent misconduct. (Am. Complt., ¶ 19). The Amended Judgment and Commitment Order directed the BOP not to use the false and misleading information in the PSR against Plaintiff, or deprive him from any programs. (Am. Complt., ¶ 20).

Upon his arrival back at the federal facility, Plaintiff informed his case manager about Judge Davis' ruling, and learned that the BOP was making arrangements for him to go to a halfway

house, since his sentence was reduced from 168 to 132 months, and Plaintiff was due for release within three months. (Am. Complt., ¶ 21). Plaintiff requested to go to a camp facility to take advantage of the furlough program. He had previously been denied such designation because of the sex offender classification, and expected having the label removed after Judge Davis' Amended Judgment. Plaintiff was sent to the Fort Dix, New Jersey facility. However, the BOP maintained the sex offender classification. Plaintiff met with his Unit Team, who refused to remove the classification. (Am. Complt., ¶¶ 22-25). The team told Plaintiff that they did not have to abide by what the judge said, rather they would rely solely on what the BOP staff had determined with respect to his labeling. (Am. Complt., ¶¶ 26-27).

Plaintiff began the Administrative Remedy Process again, and was denied based on the information in the PSR. (Am. Complt., ¶¶ 28-30). Plaintiff's appeals of the denials were dismissed because during the course of the appeals Plaintiff was released to supervised release. (Am. Complt., ¶ 32). Plaintiff claims that the defendants knew that Judge Davis' order states that he should not have the sex offender label; however they are retaliating against him for "exercise of First Amendment protected activities, particularly against BOP staff over the years . . . ." (Am. Complt., ¶¶ 31, 36, 47, 48).

4

Plaintiff claims that the sex offender classification remains in his BOP file, and that notification has been sent to law enforcement agencies. Plaintiff admits, however, that he has not been required to register as a sex offender. (Am. Complt., ¶ 34). Plaintiff notes that his requests for relief from the defendants, to have his file corrected, have been denied repeatedly. (Am. Complt., ¶¶ 36-46).

Plaintiff asks for monetary relief, and for the sex offender label to be removed from his BOP Central File.

**DISCUSSION**

**A.    Standard of Review**

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996). Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Torts Claims Act ... many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996). A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. § 1915A, that a court must dismiss, at the earliest practicable time, actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  While a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See id.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, (1957), while abrogating the decision in other respects).

The Court of Appeals for the Third Circuit recently provided detailed and highly instructive guidance as to what type of allegations qualify as sufficient to pass muster under the Rule 8 pleading standard.  See Phillips v. County of Allegheny, 515 F.3d

224, 230-34 (3d Cir. 2008).  The Court of Appeals explained, in relevant part:

> [T]he pleading standard can be summed up thus: "stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element.  This "does not impose a probability requirement at the pleading stage[ ]" but . . . "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

Phillips, 515 F.3d at 234 (internal citations omitted).  See also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (when assessing the sufficiency of a complaint, the Court must distinguish factual contentions- which allege behavior on the part of the defendant, that, if true, would satisfy one or more elements of the claim asserted- and "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements").

**B.    Bivens Actions**

Plaintiff brings this action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), alleging violations of his civil rights guaranteed under the United States Constitution.  In Bivens, the Supreme Court held that one is entitled to recover monetary damages for injuries suffered as a result of federal officials' violations of the Fourth Amendment.  In doing so, the Supreme Court created a new tort as it applied to federal officers, and a federal

7

counterpart to the remedy created by 42 U.S.C. § 1983.[1]  The
Supreme Court has also implied <u>Bivens</u> damages remedies directly
under the Eighth Amendment, <u>see</u> <u>Carlson v. Green</u>, 446 U.S. 14
(1980), and the Fifth Amendment, <u>see</u> <u>Davis v. Passman</u>, 442 U.S.
228 (1979).

    <u>Bivens</u> actions are simply the federal counterpart to § 1983
actions brought against state officials who violate federal
constitutional or statutory rights.  <u>See</u> <u>Egervary v. Young</u>, 366
F.3d 238, 246 (3d Cir. 2004), <u>cert.</u> <u>denied</u>, 543 U.S. 1049 (2005).
Both are designed to provide redress for constitutional
violations.  Thus, while the two bodies of law are not "precisely
parallel", there is a "general trend" to incorporate § 1983 law
into <u>Bivens</u> suits.  <u>See</u> <u>Chin v. Bowen</u>, 833 F.2d 21, 24 (2d Cir.
1987).

    In order to state a claim under <u>Bivens</u>, a claimant must show
(1) a deprivation of a right secured by the Constitution and laws

---

    [1]  Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State or Territory ... subjects, or
> causes to be subjected, any citizen of the
> United States or other person within the
> jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured
> by the Constitution and laws, shall be liable
> to the party injured in an action at law,
> suit in equity, or other proper proceeding
> for redress ....

of the United States; and (2) that the deprivation of the right
was caused by an official acting under color of federal law.  See
Mahoney v. Nat'l Org. For Women, 681 F. Supp. 129, 132 (D. Conn.
1987) (citing Flagg Brothers, Inc. v. Brooks, 436 U.S. 149,
155-56 (1978)).

**C.   Plaintiff's Amended Complaint Must Be Dismissed.**

   1.   Due Process/Equal Protection Claims

   Plaintiff argues that the sex offender classification
violates his due process and equal protection rights under the
Fifth Amendment.

   However, the assignment of a sexual offender PSF, in itself,
does not implicate the Due Process Clause.  "As long as the
conditions or degree of confinement to which the prisoner is
subjected is within the sentence imposed upon him and is not
otherwise violative of the Constitution, the Due Process Clause
does not in itself subject an inmate's treatment by prison
authorities to judicial oversight." Hewitt v. Helms, 459 U.S.
460, 468 (1983); see also Sandin v. Conner, 515 U.S. 472, 484
(1995) (a protected liberty interest is "generally limited to
freedom from restraint which ... imposes atypical and significant
hardship on the inmate in relation to the ordinary incidents of
prison life.").  Being classified with a PSF and its resulting
consequences of disqualification for certain programs, as with

9

any other security classification, is not outside what a prisoner "may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law."  Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002) (citations omitted); see also Montanye v. Haymes, 427 U.S. 236, 242 (1976) ("As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (prison officials have discretion over prisoner classifications and prisoners have no legitimate due process concerns in them); Wilks v. Mundt, 25 Fed. Appx. 492, 2002 WL 113837 (8th Cir. 2002)(unpubl.) (no liberty interest implicated by sex offender PSF).  In this case, Plaintiff has not alleged facts indicating atypical and significant hardship to violate the due process clause.

Further, Plaintiff's equal protection claim fails, as he has not demonstrated that he was been treated differently by application of the PSF from any person similarly situated to him. See City of Cleburne v. Cleburne Living Center, 473 U.S. 432 (1985); Williams v. Morton, 343 F.3d 212, 221 (3d Cir. 2003).

Therefore, Plaintiff's due process and equal protection claims must be dismissed, for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

2.   Retaliation Claim

Plaintiff alleges that the sex offender classification remained in his file, despite Judge Davis' order, because he was being retaliated against by defendants for previously-filed grievances, in violation of the First Amendment. (Am. Complt., ¶ 51).

In order to state a claim for retaliation, Plaintiff must show that: "(i) he engaged in constitutionally protected conduct; (ii) an adverse action was taken by prison officials 'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;' and (iii) there was a causal relationship between the two." See Adegbuji v. Green, 280 Fed. Appx. 144, 148, 2008 WL 2083142 at *3 (3d Cir. May 19, 2008)(slip copy)(quoting and citing Rauser v. Horn , 241 F.3d 330, 333 (3d Cir. 2001); Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate

11

penological interest." Id. at *3 (quoting Rauser, 241 F.3d at 334).

In this case, Plaintiff has not alleged facts indicating that he was retaliated against in violation of the Constitution. For instance, as noted up, there must be "adverse action" taken by prison officials in order to deter Plaintiff from exercising his rights.  In this case, it is plain from the amended complaint that the PSF classification was a part of Plaintiff's BOP central file.  Thus, it cannot be concluded that the prison officials enforcement of the PSF classification was "adverse action." Despite Plaintiff's contention otherwise, the BOP is not required to follow the Judge's order with regard to his classification. See, e.g., Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976) ("We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right.... The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process."); Fraise v. Terhune, 283 F.3d 506, 516 (3d Cir. 2002)(stating that "[t]he judiciary is 'ill equipped to deal with the increasingly urgent problems of prison administration and reform' and should

12

therefore give significant deference to judgments made by prison officials in establishing, interpreting, and applying prison regulations" (quoting Turner v. Safley, 482 U.S. 78, 84–85 (1987)); Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001)(noting "[w]e recognize that the task of prison administration is difficult, and that courts should afford deference to decisions made by prison officials, who possess the necessary expertise").

Nor is the sex offender classification properly applied only if there is a conviction for a sex offense.  In fact, according to BOP Program Statement ("PS") 5100.08, governing sex offender PSF's, "[a] conviction is not required for application of this PSF if the Presentence Investigation Report (PSR), or other official documentation, clearly indicates the following behavior occurred in the current term of confinement or prior criminal history."  PS 5100.09, Chap. 5, p. 8 (emphasis added).  In Plaintiff's case, in Plaintiff's words: "Judge Davis also found that the rape charge had been dismissed and there never was a conviction for any sexual or violent misconduct."  (Am. Complt., ¶ 19).  However, as indicated by Plaintiff, the fact that there existed a rape charge, and sexual or violent misconduct charges, could serve as a basis for the PSF of sex offender.  See id.

Second, Plaintiff has not alleged facts indicating a causal relationship between his previously-filed grievances, and the implication of the PSF classification.  The mere presence of

13

prior grievances in Plaintiff's file does not indicate a causal relationship.  Moreover, the PSF classification was based on information contained in Plaintiff's file, and was upheld through the BOP's administrative remedies.

    3.   <u>Fourth and Eighth Amendment Claims</u>

    Plaintiff alleges that defendants violated his right to privacy, under the Fourth Amendment, and his right to be free from cruel and unusual punishment under the Eighth Amendment. (Am. Complt., ¶¶ 52, 54).  However, this Court finds these claims without merit.

    The Fourth Amendment does infer a right to privacy of confidential information.  <u>See</u> <u>Doe v. Delie</u>, 257 F.3d 309, 316-17, n.5 (3d Cir. 2001).  However, "an inmate's constitutional right may be curtailed by a policy or regulation that is shown to be 'reasonably related to legitimate penological interests.'" <u>Id.</u> at 317 (quoting <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987)). "Courts must respect the administrative concerns underlying a prison regulation, without requiring proof that the regulation is the least restrictive means of addressing those concerns."  <u>Id.</u> In this case, it is clear that Plaintiff's PSF classification was "reasonably related to legitimate penological concerns," and did not violate the Fourth Amendment.

Further, Plaintiff has not alleged facts indicating that the sex offender classification resulted in cruel and unusual punishment in violation of the Eighth Amendment, because an altered security classification does not rise to the level of "egregious conduct" or the "unnecessary infliction of pain . . . grossly disproportionate to the severity of the crime warranting imprisonment." See Perez v. Federal Bureau of Prisons, 229 Fed. Appx. 55, 57, 2007 WL 1093322 at *1 (3d Cir. 2007)(citing Williams v. Mussomelli, 722 F.2d 1130, 1133 (3d Cir. 1983) and quoting Peterkin v. Jeffes, 855 F.2d 1021, 1023 (3d Cir. 1988)).

4.   Privacy Act Claim

Plaintiff alleges that his rights under the Privacy Act, 5 U.S.C. § 552a have been violated, because of inaccurate information in Plaintiff's file.

However, removing information from the PSR is not a cognizable form of relief under the Privacy Act. See 5 U.S.C. § 552a.  As explained by the United States District Court, District of Columbia:

> . . . BOP has promulgated regulations to exempt its Inmate Central Records System (JUSTICE/BOP-005) from subsections (d) and (g) of the Privacy Act, that is, the Act's amendment and remedies provisions.  An inmate's Central File "is part of the [BOP's] central records system, and contains a complete copy of [the PSR], which [ ] is received from the sentencing court and maintained in the ordinary course of business in the central record system."

15

   Because BOP regulations exempt the Inmate Central
Records System from subsection (d) of the Privacy Act,
Plaintiff cannot obtain the relief he seeks, that is,
amendment of the PSR itself.

   Similarly, because regulations exempt the Inmate
Central Records System from subsection (e)(5) of the
Privacy Act, see 5 U.S.C. § 552a(j)(2); 28 C.F.R. §
16.97(j), (k)(2), Plaintiff effectively is barred from
obtaining any remedy, including damages, for BOP's
alleged failure to maintain records pertaining to him
with the requisite level of accuracy.

<u>Brown v. Bureau of Prisons</u>, 498 F. Supp.2d 298, 302-303 (D.D.C.

2007)(internal citations and footnote omitted).

 Therefore, Plaintiff's Privacy Act claim must be dismissed.

 5. <u>State Law Claims</u>

 Plaintiff asserts that defendants have violated his rights

under state law and state constitutions, and that defendants

libel, slandered, and/or defamed him.  (Am. Complt., ¶¶ 55-57).

 However, any potential state law claims will be dismissed by

this Court, pursuant to 28 U.S.C. § 1367(c)(3), which states that

where a district court has dismissed all claims over which it has

original jurisdiction, it may decline to exercise supplemental

jurisdiction over a related state law claim.  The Court of

Appeals for the Third Circuit has held that, where all federal

claims are dismissed before trial, "the district court <u>must</u>

decline to decide the pendent state claims unless considerations

of judicial economy, convenience, and fairness to the parties

provide an affirmative justification for doing so."  <u>Hedges v.</u>

16

<u>Musco</u>, 204 F.3d 109, 123 (3d Cir. 2000) (citations omitted).  As no such extraordinary circumstances appear to be present, and because the Court is dismissing Plaintiff's amended complaint under § 1915, this Court will also dismiss the Plaintiff's state law claims without prejudice to Plaintiff bringing the claims in state court if he so chooses.

<u>**CONCLUSION**</u>

Based upon the foregoing, Plaintiff's complaint will be dismissed for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii).  The Court will file an appropriate order.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: July 28, 2009